# Supreme Court of Louisiana

The Opinions handed down on the **17th day of March, 2015**, are as follows:

**PER CURIAM**:

2014-B -2441    IN RE: PHYLLIS A. SOUTHALL  (Disciplinary Counsel)

Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Phyllis Southall, Louisiana Bar Roll number 18693, be and she hereby is suspended from the practice of law for three years, retroactive to January 15, 2014, the date of her interim suspension.  Respondent shall conduct a complete audit of her client trust account in a manner approved by the ODC and make any necessary restitution to her clients or third parties.  All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.

CRICHTON, J., concurs in part and dissents in part with reasons.

SUPREME COURT OF LOUISIANA

NO. 2014-B-2441

IN RE: PHYLLIS A. SOUTHALL

ATTORNEY DISCIPLINARY PROCEEDING

PER CURIAM

This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Phyllis A. Southall, an attorney licensed to practice law in Louisiana but currently on interim suspension pursuant to a joint motion of the parties filed in January 2014. *In re: Southall*, 14-0062 (La. 1/15/14), 131 So. 3d 841.

**PRIOR DISCIPLINARY HISTORY**

Before we address the current charges, we find it helpful to review respondent's prior disciplinary history. Respondent was admitted to the practice of law in Louisiana in 1988. In 1998, we considered a disciplinary proceeding in which respondent had agreed to represent clients in a legal matter, but thereafter she failed to conduct settlement negotiations, timely file a suit on the clients' behalf, or keep them informed of the status of the matter, despite their requests for information. For this misconduct, we suspended respondent for one year and one day, with six months deferred, followed by a one-year period of supervised probation with conditions. *In re: Southall*, 97-3221 (La. 5/8/98), 710 So. 2d 245 ("*Southall I*").

In 2000, while respondent was still on probation in *Southall I*, the ODC received new complaints from two of respondent's clients. In the first matter,

respondent failed to address the issue of alimony in her client's divorce case and failed to adequately supervise her office staff. In the second matter, respondent failed to communicate with her client and failed to complete the client's legal matter in a timely fashion. Prior to the filing of formal charges, respondent filed a petition for consent discipline proposing that the period of probation ordered in *Southall I* be extended for six months, subject to various conditions, including the requirement that she attend the Louisiana State Bar Association's ("LSBA") Ethics School program and obtain the assistance of the LSBA's Practice Assistance Counsel in creating an appropriate law office management program. The ODC concurred in the petition, and the disciplinary board recommended that the proposed consent discipline be accepted. We agreed, and on June 16, 2000, we ordered that respondent's probation be extended for an additional six months, subject to the conditions set forth in the petition for consent discipline. *In re: Southall*, 00-1282 (La. 6/16/00), 761 So. 2d 1286 ("*Southall II*").[1]

Against this backdrop, we now turn to a consideration of the misconduct at issue in the present proceeding.

## UNDERLYING FACTS

*Count I – The Pierre Matter*

Colette Pierre retained respondent in April 2005 to handle her divorce. Ms. Pierre paid respondent $2,030 to begin the representation, and in May 2005, respondent filed a petition for divorce on Ms. Pierre's behalf. In June 2005, Ms. Pierre's husband accepted service and waived citation. In December 2005, respondent requested and received an additional $150 from Ms. Pierre for the costs

---

[1] Respondent testified at the hearing in the instant matter that she did not "take a course" or obtain the assistance of the LSBA's Practice Assistance Counsel in creating a law office management program, as required by *Southall II*. Contrary to this testimony, respondent asserts in her "Motion to Correct the Record" (see note 5, *infra*) that she believes she completed all requirements of her previous suspension.

associated with finalizing the divorce. However, when Ms. Pierre contacted respondent's office in March 2006, the divorce still had not been completed. Respondent did not provide Ms. Pierre with an explanation for the delay and repeatedly failed to respond to Ms. Pierre's requests for information concerning the status of the matter. Ms. Pierre had to obtain alternate counsel to complete her divorce.

In September 2006, Ms. Pierre filed a disciplinary complaint against respondent. During an October 18, 2006 sworn statement, respondent testified that the delay in Ms. Pierre's divorce case was a result of Ms. Pierre's failure to pay her costs. Respondent claimed to have no record of the additional cost payment made by Ms. Pierre in December 2005.

The ODC alleged that respondent's conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4(a)(3) (failure to keep a client reasonably informed about the status of a matter), and 3.2 (failure to make reasonable efforts to expedite litigation).

*Count II – The Barr Matter*

In July 2005, respondent filed a petition for divorce on behalf of her client, David Barr. The petition included a request that the defendant, Elizabeth Barr, who had moved to Mississippi, be served via the long-arm statute. However, respondent was not aware that she had to forward the petition to Mrs. Barr pursuant to the statute; rather, she thought the clerk's office handled this task. As a result of respondent's error, Mrs. Barr was not served with the petition for divorce. Mrs. Barr did appear at a status conference in the matter in September 2005.

Without explaining the reason for the delay to Mr. Barr, respondent did not file the rule for divorce until June 2006. Once again, respondent requested that

Mrs. Barr be served pursuant to the long-arm statute. In the rule to show cause, respondent falsely alleged that Mrs. Barr was served with the initial petition in August 2005. Still not understanding the procedure for long-arm service, respondent did not forward the pleadings to Mrs. Barr so as to obtain service of the rule. Respondent did not obtain a waiver of service from Mrs. Barr until February 2007, after which she was finally able to obtain a judgment of divorce for Mr. Barr. The ODC alleges that the validity of the divorce judgment is suspect due to the fact that Mrs. Barr was never served with the original petition for divorce.

Respondent did not notify the court that the rule to show cause contained false information concerning the service upon Mrs. Barr of the petition for divorce. Respondent also failed to notify Mr. Barr of her potential malpractice and of the potential invalidity of his judgment of divorce.

The ODC alleged that respondent's conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.1 (competence), 1.3, 1.4 (failure to communicate with a client), 1.8(b) (a lawyer shall not use information relating to the representation of a client to the disadvantage of the client unless the client gives informed consent), 3.1 (meritorious claims and contentions), 3.2, and 3.3 (candor toward a tribunal).

*Count III – The Parker Matter*

In October 2005, John Parker and his siblings retained respondent to complete the Successions of Ernest and Albertha Taylor. Mr. Parker signed a retainer agreement with respondent and paid her a retainer fee in the amount of $3,900. In December 2005, Mr. Parker discharged respondent as attorney for the successions. Although a clear dispute had arisen between Mr. Parker and his sister Rhenae Keyes concerning the handling of the successions, respondent continued to represent Ms. Keyes. Specifically, respondent began to file substantive pleadings

4

on behalf of Ms. Keyes and the other heirs, contrary to the expressed wishes of Mr. Parker. Mr. Parker did not give informed consent, confirmed in writing, waiving any conflict of interest based on respondent's prior representation.

The ODC alleged that respondent's conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.1 and 1.9 (duties to former clients).

### Count IV – The Francis Matter

In January 2007, Tanesha Cayette (now Francis) retained respondent to handle a divorce and custody matter. The attorney-client contract provided that respondent did not represent clients on a fixed-fee basis. Ms. Cayette gave respondent a check in the amount of $2,035, a portion of which was to be allocated toward attorney's fees, with the remainder to be applied to costs. Respondent did not deposit these advanced funds into her client trust account.

Respondent filed the petition for divorce on Ms. Cayette's behalf on January 25, 2007. In July 2008, respondent terminated Ms. Cayette's representation. Respondent did not provide the subsequent attorney, Joni Buquoi, with a complete copy of Ms. Cayette's file until January 2009, despite numerous requests for the file from Ms. Buquoi.

The ODC alleged that respondent's conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.5(f)(3) (failure to render a periodic accounting for client funds), 1.5(f)(4) (when the client pays the lawyer an advance deposit to be used for costs and expenses, the funds remain the property of the client and must be placed in the lawyer's trust account), 1.15(a) (safekeeping property of clients and third persons), 1.16(d) (obligations upon termination of the representation), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).

5

At the hearing, respondent admitted that she did not hold Ms. Cayette's funds in her client trust account. She testified that she cashed Ms. Cayette's check and placed the money in a bank envelope, which she locked in the glove compartment of her car.[2] Respondent further indicated that this was her standard practice for handling advanced payments of client funds.

### Count V – The Morris Matter

In February 2008, Keith Morris retained respondent to handle several child support matters. The attorney-client contract provided that respondent did not represent clients on a fixed-fee basis. Mr. Morris gave respondent $2,725 in cash, representing a deposit for attorney's fees associated with this matter. The receipt provided to Mr. Morris reflects that no part of his payment was to be allocated towards costs. There is no record of the funds having been deposited into respondent's client trust account in February, March, or April of 2008. The ODC alleges that in the absence of documentation proving what happened to these funds, it is presumed that respondent converted the funds to her own use.

Respondent gave a sworn statement to the ODC on April 13, 2011. During the statement, respondent was asked to produce certain financial information no later than May 13, 2011. When she failed to do so, the ODC issued a subpoena to respondent, giving her until June 24, 2011 to provide the information. Respondent failed to provide all of the requested documentation at that time, necessitating the issuance of a subpoena to respondent's bank to obtain her financial records.

---

[2] Maintaining client funds in this manner raises the presumption of conversion, placing the burden on respondent to prove otherwise. *See Louisiana State Bar Ass'n v. Krasnoff*, 488 So. 2d 1002 (La. 1986) ("Indeed, when an attorney relies upon a 'black box' defense, viz., that he kept client funds secretly but securely in a private safe or similar unregulated depository, the likelihood of actual embezzlement is so great, and the policy of professional responsibility in protecting the client from such risks so strong, that it should be presumed that the attorney is guilty of embezzlement unless he successfully carries both the burden of going forward with the evidence and the burden of persuasion otherwise.").

Upon reviewing the available financial information related to her trust account, the ODC discovered that respondent regularly and intentionally failed to properly secure client funds in the account, which resulted in repeated instances of commingling personal funds with client funds and conversion of client funds. The ODC further discovered that respondent failed to maintain complete records of trust account funds held in connection with the representation of her clients.

The ODC alleged that respondent's conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.5(f)(3), 1.15(a), 8.1(c) (failure to cooperate with the ODC in its investigation), and 8.4(c).[3]

At the hearing, respondent admitted that she did not deposit Mr. Morris's funds in her client trust account. She testified that she placed Mr. Morris's cash into a bank envelope and kept it in the locked glove compartment of her car. Respondent then claimed to have lost the cash by accident.

Respondent also acknowledged at the hearing that she mismanaged her client trust account. She admitted she cannot account for $31,398.52 in the trust account related to the cases of five clients because she does not have accurate records of the cases. The trust account also contains another $9,000 which respondent admitted does not belong to her; however, she has no documentation to assist her in determining the ownership of these funds.

## DISCIPLINARY PROCEEDINGS

In June 2012, the ODC filed five counts of formal charges against respondent. Respondent answered the formal charges, denying any misconduct. The matter then proceeded to a formal hearing on the merits, conducted over the course of two days in November 2012 and one day in January 2014.

---

[3] The ODC also alleged that respondent violated Rules 1.2 (scope of the representation), 1.3, and 1.4 in the Morris matter; however, these allegations were dismissed at the formal hearing. As such, no further reference will be made to these allegations.

*Hearing Committee Report*

After considering the evidence and testimony presented at the hearing, the hearing committee made the following factual findings:

Count I – Ms. Pierre paid respondent $2,030 in April 2005 for a divorce proceeding. The petition was filed on May 3, 2005, and the husband accepted service on June 13, 2005. After ten months had passed, the divorce was still not finalized. Asked at the formal hearing why the divorce was not completed in December 2005, respondent testified that Ms. Pierre owed her money for costs. However, after the initial $2,030 payment, respondent requested and was paid an additional $150 for court costs, which still did not result in the divorce that Ms. Pierre sought.

Based on these findings, the committee concluded that respondent did not sufficiently communicate with Ms. Pierre about the delay in finalizing the divorce and did not ultimately do what she was paid to do.

Count II – Respondent filed a divorce petition for Mr. Barr on July 29, 2005. When the petition was filed, Mrs. Barr had moved to Mississippi and had to be served via the long-arm statute. Respondent depended on the clerk of court to do so. She admitted to making a mistake, but reasoned that "it is a mistake easily made and it was a mistake easily corrected without any negative affect to Mr. Barr." Respondent did not file the rule for divorce until June 6, 2006, but she did not explain to Mr. Barr why the divorce proceedings were being delayed. Respondent testified that the delays in obtaining the divorce were not solely her fault as Mr. Barr waited three months after being informed several times that he needed to come to her office to pay costs and sign necessary paperwork. Respondent admitted that the remainder of the delay was attributable to her misunderstanding of the service requirements. Furthermore, in the rule for divorce

respondent made a false statement of fact, i.e., that Mrs. Barr was served with the petition for divorce on or about August 18, 2005.

Based on these findings, the committee concluded that respondent failed to communicate with Mr. Barr, who testified that he had called respondent a few times and never received a returned phone call. Mr. Barr hired another lawyer to determine whether the divorce was valid, which it was, according to Mr. Barr. Finally, the committee determined that after looking up the long-arm statute, an attorney should be able to follow the procedure.

Count III – Mr. Parker retained respondent to handle a succession matter. Respondent was also retained by siblings of Mr. Parker. It became clear there was a conflict between Mr. Parker and his sister; in her pre-hearing memorandum, respondent admitted the parties had a disagreement at the initial consultation. Mr. Parker did not give respondent informed consent to waive the conflict of interest. As a result of respondent's failure to represent Mr. Parker's interests, he terminated the representation. Respondent nevertheless continued to work on the succession matter, although it remains unresolved. The committee found it troubling that respondent disregarded the conflict of interest and the duty she owes to her former client.

Count IV – Ms. Cayette retained respondent in a divorce matter and gave her a check for attorney's fees and costs. Respondent admitted she did not deposit the advanced funds into her client trust account. Respondent also did not provide Ms. Cayette's file to her new attorney after the representation ended in July 2008. Despite repeated requests, the file was not turned over to successor counsel until January 2009.

Count V – Mr. Morris retained respondent to handle child support matters and paid her $2,725 in cash, which was a deposit for attorney's fees. Respondent admits she did not deposit the cash into her client trust account, and there is no

9

documentation showing what happened to the funds. Additionally, respondent did not provide financial information to the ODC after being requested to do so. The ODC ultimately had to issue a subpoena to respondent's bank. Upon reviewing the bank information, the ODC found that respondent has repeatedly commingled funds. The committee also found respondent acted in bad faith in intentionally hindering the ODC's investigation.

Based on the above findings in these several matters, the committee determined respondent violated the Rules of Professional Conduct as alleged in the formal charges. The committee observed that respondent had no reasonable explanation for her actions other than that she is not proficient at math.

The committee found the following aggravating factors are present: a prior disciplinary record and refusal to acknowledge the wrongful nature of the conduct. The committee observed that respondent failed to and/or refused to cooperate with the disciplinary process, failed to appreciate the seriousness of her violations, and acted irresponsibly when dealing with her clients in a way that can only be described as a pattern of misconduct. The committee did not mention any mitigating factors.

Based upon these findings and conclusions, the committee recommended respondent be suspended from the practice of law for three years, with all but one year and one day deferred, followed by a three-year period of supervised probation.[4] The committee also recommended respondent pay restitution to her clients.

_____

[4] We do not typically impose a period of probation in cases when the suspension imposed is greater than one year and one day, as such issues, along with any other relevant factors, are best addressed if and when the lawyer applies for reinstatement. *See, e.g., In re: Welcome*, 02-2662 (La. 1/24/03), 840 So. 2d 519; *In re: Harris*, 99-1828 (La. 9/17/99), 745 So. 2d 1172. Moreover, even if we were inclined to adopt the committee's recommendation that respondent be placed on probation, Supreme Court Rule XIX, § 10(A)(3) provides for a period of probation not to exceed two years.

The ODC filed an objection to the leniency of the hearing committee's recommendation.

*Disciplinary Board Recommendation*

After review, the disciplinary board found the hearing committee's factual findings are not manifestly erroneous, with two exceptions. First, the board found the committee erred in finding respondent failed to communicate with Mr. Barr about the reasons his legal matter was delayed, as Mr. Barr testified that respondent explained to him the reasons for the delay. Second, the board found the committee erred in concluding that respondent failed to appreciate the seriousness of her violations and acted irresponsibly when dealing with her clients. While her testimony on the first day of the hearing appeared to be evasive and unrepentant at times, on the second day of the hearing, respondent admitted to the trust account violations and was remorseful for her conduct. Respondent also voluntarily agreed to petition the court for interim suspension. The board found these facts demonstrate that respondent appreciates the seriousness of her misconduct, albeit late.

Next, the board determined the hearing committee correctly applied the Rules of Professional Conduct, with some exceptions relating to Counts II and IV:

In connection with Count II, the board found the record does not support the conclusion that respondent violated Rules 1.4(a), 1.8(b), and 3.1. There is no evidence supporting the conclusion that respondent did not adequately communicate with Mr. Barr in violation of Rule 1.4(a). It is also noted that Mr. Barr had hired another attorney who investigated the service issue and determined the judgment of divorce was valid. It is unclear what information respondent used to the disadvantage of Mr. Barr in violation of Rule 1.8(b). It is further noted that respondent informed Mr. Barr and the court of the service issues. While

11

respondent's statement that Mrs. Barr had been served was false, it does not appear this statement was frivolous in violation of Rule 3.1. Once she was made aware of the service issues, respondent informed the court of these issues and obtained a waiver of service from Mrs. Barr.

In connection with Count IV, the record does not support the conclusion that respondent violated Rule 8.4(c). The committee did not make any specific factual findings that respondent engaged in dishonest or deceptive conduct in this matter. The record demonstrates respondent knowingly engaged in misconduct, but does not indicate that she did so with an intentionally dishonest motive.

The board determined respondent knowingly violated duties owed to her clients, the legal system, and the legal profession. With the exception of her failure to cooperate with the ODC in Count V, her conduct does not appear to be intentional or dishonest. Respondent's lack of knowledge of accounting principles and procedural rules caused delays in Counts I and II, causing actual harm to her clients. Respondent's failure to comply with the ODC's request for her trust account records caused that agency to expend additional resources. The remainder of respondent's misconduct, while significant, did not cause any apparent actual harm, although there was the potential for significant harm, especially with regard to trust account management. The board found respondent failed to overcome the presumption of conversion in these cases. After considering the ABA's *Standards for Imposing Lawyer Sanctions*, the board determined the applicable baseline sanction is suspension.

The board found the following aggravating factors are present: a prior disciplinary record, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules or orders of the disciplinary agency, and substantial experience in the practice of law (admitted 1988). The board found the following mitigating factors

are present: absence of a dishonest or selfish motive (except with regard to failing to cooperate with the ODC in Count V), delay in the disciplinary proceedings, remorse, and remoteness of prior offenses.

Turning to the issue of an appropriate sanction, the board acknowledged respondent's trust account mismanagement, including her failure to place advance fees and costs in her trust account, as the most significant misconduct present in this matter. Considering the seminal case of *Louisiana State Bar Ass'n v. Hinrichs*, 486 So. 2d 116 (La. 1986), which sets forth general guidelines for imposing discipline in a conversion case, the board determined that an appropriate sanction for respondent's misconduct falls within the eighteen-month to two-year range. The board also noted that recent jurisprudence supports the imposition of a similar sanction.

Based on this reasoning, the board recommended that respondent be suspended from the practice of law for one year and one day, retroactive to January 15, 2014, the date of her interim suspension. The board also recommended that respondent be ordered to conduct a complete audit of her trust account in a manner approved by the ODC and provide any restitution as necessary. The board further recommended that respondent be required to attend the LSBA's Trust Accounting School prior to her reinstatement and that she be assessed with the costs and expenses of this matter.

The ODC filed an objection to the disciplinary board's recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).[5]

---

[5] After this case was submitted, respondent filed a motion captioned "Motion to Correct the Record." In that motion, she asserts that her attorney "unintentionally misrepresented key facts before this Court" and moves to correct the record. Supreme Court Rule XIX, § 11(G)(4) provides a mechanism to correct the record developed in the hearing committee. However, after reviewing respondent's filing, we conclude it does not seek to correct the record, but instead consists of additional argument. Accordingly, we have elected to treat the motion as a post-argument brief.

# DISCUSSION

Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. *In re: Banks*, 09-1212 (La. 10/2/09), 18 So. 3d 57. While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee's factual findings. *See In re: Caulfield*, 96-1401 (La. 11/25/96), 683 So. 2d 714; *In re: Pardue*, 93-2865 (La. 3/11/94), 633 So. 2d 150.

The record supports a finding that respondent neglected legal matters, failed to communicate with a client, engaged in a conflict of interest with a former client, mishandled her client trust account, resulting in commingling and conversion, and failed to cooperate with the ODC in an investigation. Based on these facts, respondent has violated the Rules of Professional Conduct as found by the disciplinary board.

Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent's actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. *Louisiana State Bar Ass'n v. Reis*, 513 So. 2d 1173 (La. 1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. *Louisiana State Bar Ass'n v. Whittington*, 459 So. 2d 520 (La. 1984).

Clearly, the most serious misconduct in this case relates to the commingling and conversion of client funds resulting from respondent's mishandling of her trust

14

account. In *Louisiana State Bar Ass'n v. Hinrichs*, 486 So. 2d 116 (La. 1986), we set forth the following guidelines for imposing discipline in a conversion case:

> In a typical case of disbarment for violation of DR 9-102 [now Rule 1.15], one or more of the following elements are usually present: the lawyer acts in bad faith and intends a result inconsistent with his client's interest; the lawyer commits forgery or other fraudulent acts in connection with the violation; the magnitude or the duration of the deprivation is extensive; the magnitude of the damage or risk of damage, expense and inconvenience caused the client is great; the lawyer either fails to make full restitution or does so tardily after extended pressure of disciplinary or legal proceedings.

> A three year suspension from practice typically results in cases involving similar but less aggravated factors. In such cases the lawyer is guilty of at least a high degree of negligence in causing his client's funds to be withdrawn or retained in violation of the disciplinary rule. He usually does not commit other fraudulent acts in connection therewith. The attorney usually benefits from the infraction but, in contrast with disbarment cases, the client may not be greatly harmed or exposed to great risk of harm. The attorney fully reimburses or pays his client the funds due without the necessity of extensive disciplinary or legal proceedings.

> A suspension from practice of eighteen months or two years will typically result where the facts are appropriate for a three-year suspension, except that there are significant mitigating circumstances; or where the facts are appropriate for a one-year suspension, except that there are significant aggravating circumstances.

> A suspension from practice of one year or less will typically result where the negligence in withdrawing or retaining client funds is not gross or of a high degree. No other fraudulent acts are committed in connection with the violation of the disciplinary rule. There is no serious harm or threat of harm to the client. Full restitution is made promptly, usually before any legal proceeding or disciplinary complaint is made.

Applying the guidelines of *Hinrichs*, we find the baseline sanction in this case to be a three-year suspension from the practice of law. Respondent is guilty of at least a high degree of negligence in the mishandling of client funds, but she

15

did not commit any other fraudulent acts.[6]  Although the magnitude of the harm caused to her clients was not extensive, respondent's actions resulted in some actual harm and caused her clients to be exposed to a serious threat of harm.

Several aggravating factors are present, including respondent's prior disciplinary record, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules or orders of the disciplinary agency, and substantial experience in the practice of law (admitted 1988).   In mitigation, we recognize an absence of a dishonest or selfish motive, delay in the disciplinary proceedings, remorse, and remoteness of prior offenses.

Considering these factors, as well as the remaining misconduct at issue in these proceedings, we conclude the appropriate sanction in this case is a three-year suspension from the practice of law, retroactive to the date of respondent's interim suspension.  We will also order respondent to conduct an audit of her client trust account in a manner approved by the ODC and make any necessary restitution to her clients or third parties.

**DECREE**

Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Phyllis Southall, Louisiana Bar Roll number 18693, be and she hereby is suspended from the practice of law for three years, retroactive to January 15, 2014, the date of her interim suspension.  Respondent shall conduct a complete audit of her client trust account in a manner approved by the ODC and make any necessary restitution to her clients or third parties.  All costs and expenses in the

---

[6] There is no evidence that respondent benefitted from her mishandling of her client trust account; indeed, it appears that her infractions arise from very poor law office management skills.

matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.

SUPREME COURT OF LOUISIANA

NO. 14-B-2441

IN RE: PHYLLIS A. SOUTHALL

CRICHTON, J., concurs in part and dissents in part:

While I agree that respondent's conduct warrants discipline, I believe the three-year suspension imposed by the majority is unduly lenient. The facts of this case are egregious, and as such, disbarment is the only appropriate sanction.

The record reveals that among other misconduct, respondent has committed numerous trust account violations and has mishandled client funds. Specifically, respondent failed to place into a client trust account the advance fees and costs which she received in connection with the representation of her clients. Instead, respondent claims that it was her standard practice to cash the checks given to her by her clients, following which she would place the cash in bank envelopes and lock the envelopes in the glove compartment of her car. Maintaining the funds in this manner leads to a presumption of conversion, and the burden shifted to respondent to prove that she did not convert her clients' funds. *Louisiana State Bar Ass'n v. Krasnoff*, 515 So. 2d 780 (La. 1987). She clearly failed to meet her burden in this regard. I must also conclude that respondent's peculiar accounting system caused actual harm to her clients, particularly in the instance in which she claims to have lost her client's cash "by accident."

Furthermore, respondent has failed to maintain financial records as required by the Rules of Professional Conduct. When called upon to do so, respondent could not show that some $31,000 in client funds was properly disbursed because she has no records, files, or disbursement sheets. Likewise, there is a balance of approximately $9,000 in respondent's client trust account, but due to her lack of

recordkeeping the ownership of these funds has yet to be ascertained. Respondent admitted that she mismanaged and misused her client trust account and engaged in an unknown amount of commingling and conversion. The ODC made an attempt to obtain respondent's bank records, but ultimately, the extent of the conversion is not truly known because of respondent's gross mismanagement of the client funds entrusted to her.

In the landmark case of *Louisiana State Bar Ass'n v. Hinrichs*, 486 So. 2d 116 (La. 1986), we explained that when a lawyer converts client funds, disbarment is generally appropriate when one or more of the following elements are present: the lawyer acts in bad faith and intends a result inconsistent with his client's interest; the lawyer commits forgery or other fraudulent acts in connection with the violation; the magnitude or the duration of the deprivation is extensive; the magnitude of the damage or risk of damage, expense and inconvenience caused the client is great; and the lawyer either fails to make full restitution or does so tardily after extended pressure of disciplinary or legal proceedings. *Id.* at 122. In my opinion, respondent has caused enormous risk of harm to her clients by her stunning lack of mismanagement of her client trust account. Moreover, she has not made full restitution and will likely be unable to do so without the financial records she should have maintained throughout her legal career. Accordingly, disbarment is clearly appropriate.

Given the pattern of misconduct in this case, and the resulting harm to clients, I would disbar respondent. Accordingly, I respectfully dissent.